CA No. 13-55484

# United States Court of Appeals for the Ninth Circuit

_____

MARK TOWLE
*Defendant and Appellant*

v.

DC COMICS
*Plaintiff and Appellee.*

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
(HON. RONALD S.W. LEW, PRESIDING • CASE NO. CV 11-3934)

_____

## APPELLANT'S REPLY BRIEF

_____

Edwin F. McPherson
Tracy B. Rane
**McPHERSON RANE LLP**
1801 Century Park East
24th Floor
Los Angeles, California 90067-2326
(310) 553-8833

Larry Zerner
**LAW OFFICES OF
  LARRY ZERNER**
1801 Century Park East
Suite 2400
Los Angeles, California 90067-2326
(310) 773-3623

*Attorneys for Defendant and Appellant*
**Mark Towle**

## TABLE OF CONTENTS

**I.     INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**II.    DISCUSSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    **A.     DC CANNOT ESTABLISH THAT TOWLE INFRINGED DC'S COPYRIGHT BECAUSE THE BATMOBILE IS A FUNCTIONAL AUTOMOBILE – AND NONE OF ITS FEATURES CAN BE SEPARATED FROM THE AUTOMOBILE'S UTILITY**. . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        **1.     The Features Identified By DC In The 1966 And 1989 Batmobiles That Appear In Towle's Replicas Are Not Subject To Copyright Protection Because They Are Functional**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        **2.     After Filtering Out The Functional Elements Of The Replicas No Substantial Similarities Of Protectable Expression Remain Between The Replicas And The Batmobiles In DC's Comic Books**. . . . . . . . . . . . . . . . . . . 9

    **B.     DC HAS FAILED TO ESTABLISH THAT THE BATMOBILES THAT APPEAR IN THE COMIC BOOKS WARRANT COPYRIGHT PROTECTION AS A "CHARACTER"**. . . . . . . 13

    **C.     THE REPLICAS ARE NOT UNAUTHORIZED DERIVATIVE WORKS**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18\

        **1.     The Replicas Are Not Derivative Of The Batmobiles In DC's Comic Books**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

        **2.     The Designs Of The 1966 (Barris) Batmobile And 1989 (Furst) Batmobile Are Not Derived From The Batmobile(s) In DC's Comic Books**. . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

i

**D.**     <u>DC HAS FAILED TO DEMONSTRATE THAT IT OWNS THE COPYRIGHTS IN THE 1966 AND 1989 BATMOBILES</u>. . . . . 24

     **1.**     <u>Towle Did Not Infringe DC's Merchandising Rights Or Copyright In The 1966 Batmobile</u>. . . . . . . . . . . . . . . . . . . 24

     **2.**     <u>DC Has Failed To Demonstrate Ownership Of The 1989 Batmobile.</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

**E.**     <u>DC'S FAILURE TO PROVIDE TOWLE NOTICE OF THE REGISTRATIONS IS FATAL TO ITS COPYRIGHT CLAIM</u>. 31

**F.**     <u>TOWLE SHOULD HAVE BEEN PERMITTED TO ASSERT A LACHES DEFENSE TO DC'S TRADEMARK INFRINGEMENT CLAIM.</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

**III.**   <u>CERTIFICATE OF COMPLIANCE</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

# TABLE OF AUTHORITIES

<u>**CASES**</u>                                                                          <u>**PAGE(S)**</u>

Cavalier v. Random House, Inc.
      297 F.3d 815 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Conan Properties, Inc. v. Conan Pizza, Inc.,
      752 F.2d 145 (5th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Dallas Cowboys, etc. v. Pussycat Cinema, Ltd.,
      604 F.2d 200 (2d Cir.1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Feist Publications, Inc. v. Rural Tel. Serv. Co.,
      499 U.S. 340 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Halicki Films, LLC v. Sanderson Sales & Marketing,
      547 F.3d 1213 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

HTI Holdings, Inc. v. Hartford Cas. Ins. Co.,
      2011 WL 4595799 (D. Or. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Inhale, Inc. v. Starbuzz Tobacco, Inc.,
      739 F.3d 446 (9th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4-6, 23

Jarrow Formulas, Inc. v. Nutrition Now, Inc.,
      304 F. 3d (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Maguson v. Video Yesteryear,
      85 F.3d at 1428 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Metro-Goldwyn Mayer v. American Honda Motor Co., Inc.,
      900 F. Supp. 1287 (C.D. Cal. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Motta v. Samuel Weiser, Inc.,
      768 F.2d 481 (1st Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

New Line Cinema Corp. v. Russ Berrie & Co.,
    161 F. Supp. 2d 293 (S.D.N.Y. 2001)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Norris Industries, Inc. v. International Telephone & Telegraph Corp.,
    696 F.2d 918 (11th Cir.), cert. den., 464 U.S. 818 (1983)  . . . . . . . . . . 4, 22

Olson v. National Broadcasting Co.,
    855 F.2d 1446 (9th Cir. 1988)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Poe v. Missing Persons,
    745 F.2d 1238 (9th Cir. 1984)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Religious Tech. Ctr. v. Netcom On-Line Comm. Services, Inc.,
    923 F. Supp. 1231 (N.D. Cal. 1995)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Rice v. Fox Broad. Co.,
    330 F.3d 1170 (9th Cir. 2003)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 19

Salinger v. Colting,
    607 F.3d  68 (2d Cir. 2009)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Toho Co., Ltd. v. William Morrow and Co., Inc.,
    33 F.Supp.2d 1206 (C.D. Cal. 1998)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Universal v. Harold Lloyd Corp.,
    162 F.2d 354 (9th Cir. 1947)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Williamson v. Life Ins. Co. of N. Am.,
    2012 WL.3262857 (D. Nev. 2012)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Zenix Indus. v. King Hwa,
    920 F.2d 937 (9th Cir. 1990)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

## **STATUTES**

17 U.S.C. § 101 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

## <u>FEDERAL RULES</u>

Federal Rule of Evidence 801(d)(2) and (D)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Fed. R. Civ. P. 30(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 30

Fed. R. App. P. 32(a)(6)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

## <u>OTHER AUTHORITIES</u>

3 *Nimmer* §13.03[B]  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Copyright Office Circular 40 *Copyright Registration For Pictorial, Graphic and Sculptural Works*  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

# I.  INTRODUCTION

In Inhale, Inc. v. Starbuzz Tobacco, Inc., 739 F.3d 446 (9th Cir. 2014), this Court stated that: "[w]hen interpreting the Copyright Act, we defer to the Copyright Office's interpretations in the appropriate circumstances."  The Copyright Office has clearly, consistently, and unambiguously stated that automobile designs are not copyrightable, and that a drawing of an automobile does not give the artist the exclusive right to make automobiles of the same design.

Based on these public pronouncements by the Copyright Office and the fact that the design patents for the 1966 and 1989 Batmobiles expired, Towle spent the last 10 years building a business that did not infringe on DC's copyright, but merely copied that which was unprotectable and in the public domain.  Moreover, Towle acted with DC's express knowledge and implied consent.

Then, after more than 10 years of watching Towle expend great sums of money building up his business, DC filed the instant lawsuit, claiming that it owns the copyright to these automobiles, notwithstanding the clear language of the Copyright Office that such ownership is impossible, and notwithstanding that DC does not own the copyright to either the 1966 television show or the 1989 film.

Even if these automobiles were copyrightable, DC cannot prove infringement. Although DC boldly asserts that Towle has "slavishly copied" DC's "Batmobiles," it utterly fails to demonstrate *how* Towle has copied any protectable expression in any of DC's works. DC would like this Court to hold that any automobile that contains features that even remotely invoke the image of Batman or the Batmobile necessarily infringes the copyright to DC's batmobiles. However, this is not what copyright protects; copyright protects the original expression of a copyright owner.

DC simply posts its trademark on the designs of a myriad of makes and models of preexisting automobiles, and then claims somehow to have gained copyright ownership rights to each element of the preexisting designs. Yet, notably absent from DC's Answering Brief is any response to Towle's assertion that DC cannot sue Towle for infringing designs of automobiles that DC did not create.

## II.  DISCUSSION

**A.**    **DC CANNOT ESTABLISH THAT TOWLE INFRINGED DC'S COPYRIGHT BECAUSE THE BATMOBILE IS A FUNCTIONAL AUTOMOBILE – AND NONE OF ITS FEATURES CAN BE SEPARATED FROM THE AUTOMOBILE'S UTILITY.**

**1.**    **The Features Identified By DC In The 1966 And 1989 Batmobiles That Appear In Towle's Replicas Are Not Subject To Copyright Protection Because They Are Functional.**

DC acknowledges that, pursuant to 17 U.S.C. § 101, a pictorial, graphic, and sculptural work shall include works of artistic craftsmanship insofar as their form ***but not their mechanical or utilitarian aspects*** . . ."  Appellee's Answering Brief (hereinafter "AB") at 37. (emphasis added).  Significantly, DC also admits that "***[u]tility prohibits copyright protection for cars as cars,***" (AB at 39), and that copyright protection is afforded for the shape of an automobile only if it contains some element that physically or conceptually ***can be identified as separated from the utilitarian aspects of the article***.  AB at 37-38 (emphasis added).

3

Nevertheless, DC attempts to subvert this rule by arguing that Towle has added "DC's protectable expressive elements to the cars," thereby transforming functional automobiles into automobiles that are unauthorized Batmobile replicas. AB at 39. Significantly, however, as set forth below, DC fails to address, in any serious manner, the evidence showing that the majority of the components that appear in both the 1966 and 1989 Batmobiles are functional; therefore, no matter how artistically designed they are, they are not protected by copyright. See Norris Industries, Inc. v. International Telephone & Telegraph Corp., 696 F.2d 918, 923-925 (11th Cir.), cert. den., 464 U.S. 818 (1983).

Indeed, this Court, just this year, confirmed that, where the shape of an object is not separable from the object's utilitarian function, the shape of the object is not copyrightable. Inhale, Inc. v. Starbuzz Tobacco, Inc., 739 F.3d at 449[1]. Although DC relegated its terse discussion of that case to a footnote, that case is very important.

---

[1]DC argues that Inhale is distinguishable because "the Batmobile is not a useful article, but a prop meant to portray the appearance of a literary element." AB at 40, n.10. Of course, this argument ignores the fact that the 1966 and 1989 Batmobiles were actual cars, and not simply props. It also ignores the fact that, whether or not an item is a useful article is a question of fact. See Inhale, 739 F.3d at 448 (citing Poe v. Missing Persons, 745 F.2d 1238 (9th Cir. 1984)).

In Inhale, the plaintiff claimed that the defendants infringed its copyright in the shape of a hookah water container. Id. at 447. The parties agreed that the water container was a useful article, and that "the shape of a container is copyrightable only if, and only to the extent that, it incorporates sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the container." Id. (citing 17 U.S.C. § 101).

Although the plaintiff argued that the issue of conceptual separability is a factual question, this Court disagreed, stating that, although the issue of whether an item is a useful article is a factual question, usefulness is distinct from separability. Id. at 448. This Court adopted an opinion letter from the Copyright Office, in which the Copyright Office determined that the distinctiveness of an item's shape does not affect separability, and ultimately ruled that, although Inhale's water container has a distinctive shape, the shape of the alleged artistic features and the useful article were "one and the same." Id. at 449.

Thus, this Court held that: "[t]he shape of a container is not independent of the container's utilitarian function – to hold the contents within its shape – because the shape accomplishes the function. The district court correctly concluded that the shape of Inhale's hookah water container is not

5

copyrightable."[2]  Id.

Similarly, in this case, like spokes on a wheel, or the shape of a hookah container, the majority of the similarities between Towle's Replicas and the 1966 and 1989 Batmobiles are functional and non-separable items, and therefore cannot be the subject of copyright.  First, with respect to the 1966 Batmobile, the following features that appear on the car are *functional*, and are neither physically nor conceptually separable from the car:[3]

   •    The Jet engine exhaust pipe;

---

[2]In Inhale, this Court stated: "[w]hen interpreting the Copyright Act, we defer to the Copyright Office's interpretations in the appropriate circumstances." Id. at 448.  On the Copyright Office's website, Circular 40, entitled *Copyright Registration For Pictorial, Graphic and Sculptural Works* www.copyright.gov/circs/circ40.pdf, provides the following, at Page 2: "Copyright in a work that portrays a useful article extends only to the artistic expression of the author of the pictorial, graphic, or sculptural work.  It does not extend to the design of the article that is portrayed.  For example, ***a drawing or photograph of an automobile . . . may be copyrighted, but that does not give the artist or photographer the exclusive right to make automobiles*** . . . of the same design." Id. (emphasis added).  Contrary to this concept, DC claims that, because it drew a picture of an automobile (albeit one that was copied from an existing automobile), it has the exclusive right to manufacture automobiles of the same design.  Towle's position is consistent with the Copyright Office's interpretation, *i.e.*, that Towle may not make copies of the actual *drawings/comics*, but he may manufacture automobiles that the comics (allegedly) depict.

[3]DC does not dispute that Towle is an automobile expert.  Moreover, the record is devoid of *any* expert opinion from DC to dispute the opinion offered by Towle concerning the functional elements of the Batmobile.  This alone warrants reversal of the District Court's Order.

6

- Rear bat-fins.  These are an aerodynamic aspect of the car, which are not separable from the design of the car;

- Radarlike screen on the replica car;

- Portable fire extinguisher;

- Batwing rear fenders;

- Double cockpit; and

- Cockpit arch.

ER 1706-1710; 1793-1794.

Accordingly, after filtering out these unprotectable functional and non-separable elements, the only similarities that remain between the two cars are the bat-shaped logos (which are the subject of trademark), and the red and black color scheme, which, on their own, cannot support DC's argument that Towle added "DC's protectable expressive elements to the cars."  AB at 39.

Similarly, Towle identified the following functional items that appear on his 1989 Batmobile replica:

- Jet turbine engine intake grill;

- Mandible style front fenders (functional in that they cover the wheels);

- Rear sculpted fins on the 1989 Batmobile replica (functional in that

7

they are an aerodynamic aspect of the vehicle); and

•    Interior monitor in the 1989 Batmobile replica (functional in that

drivers use it as a rear-view camera).

ER 1795-1796; 1711-1713.

Again, after filtering out the aforementioned functional elements from the

1989 Batmobile, which are <u>not</u> subject to copyright protection, no similarities of

protectable expression remain.

DC next argues that, even if 1966 and 1989 Batmobiles were functional,

"their unprotectable status would not wrest DC from it prior rights in the

Batmobile as part of a literary property."  However, this argument misses the

point.  Towle is not arguing that, by creating Replicas, he somehow divested DC

of its copyright ownership in the Batmobiles.  Rather, because the similarities

between the Replicas and the 1966 and 1989 Batmobiles relate only to functional

elements, they are not subject to copyright protection.

Even if this Court were to hold that the Batmobile is a protectable character

(<u>see</u> Section B, *infra*), a ruling in Towle's favor would not divest DC of the rights

that it might hold in the character.  A ruling in Towle's favor would merely uphold

the longstanding and uncontroversial rule that *useful items*, specifically the design

of <u>automobiles</u>, are not, and have never been, protectable under copyright law as a

8

sculptural work (or anything else).

Both the 1966 and 1989 Batmobiles were protected by design patents for 14 years.  However, once those patents expired, Congress intended that anyone could use those designs to make replica cars.  There is nothing in the Congressional Record that would indicate that Congress intended to make an exception to this rule if a car is referred to as a "Batmobile."

2.  **After Filtering Out The Functional Elements Of The Replicas No Substantial Similarities Of Protectable Expression Remain Between The Replicas And The Batmobiles In DC's Comic Books**.

Similarly, DC utterly fails to satisfy its burden of showing that Towle's Replicas are substantially similar to the batmobiles in its comic books under the Ninth Circuit's extrinsic test.  Rather, as demonstrated below, after filtering out all of the functional elements of the Replicas, all that remains is a very limited number of generic similarities, which are not protected by copyright:

9

| Purported Similarity Identified By DC | In All Comic Book Batmobiles? | In 1966 Towle Replica? | In 1989 Towle Replica? | Functional In Towle Replicas? |
|---|---|---|---|---|
| Black | No. See e.g., ER 752 | No. Replica is black and red. | Yes | No |
| Aerodynamic | No. See e.g., ER 752, 1417,1470 | No | Yes | Yes (ER 1706, 1793) |
| Scalloped bat fins | No. See e.g., ER 752, 1417,1470 | Yes | Yes | Yes (ER 1706, 1793) |
| Bat-themed Bumper | No. See e.g., ER 752, 1417,1470 | No | No | No |
| Exaggerated front fenders | No. See e.g., ER 752, 1417,1470 | No | Yes | Yes (ER 1706, 1793) |
| Jet engine afterburner | No. See e.g., ER 752, 1417,1470 | Yes | Yes | Yes (ER 1706, 1793) |
| Significantly curved windshields | No. See e.g., ER 752, 1417,1470 | Yes | Yes | Yes |

10

| Bat symbols throughout | No. See e.g., ER 752, 1417,1470 | Yes | No (only on hubcaps) | No |
| Numerous fantastical bat-themed gadgets including the bat phone | No. See e.g., ER 1511, 752, 1417, 1470 | No | No | No |

As set forth above, after filtering out the non-protected functional elements, at most, DC has established that: (1) the 1989 replica is black and *some* of DC's batmobiles were black; and (2) the 1966 and 1989 replicas have bat symbols on them, and *some* of DC's batmobiles had bat symbols somewhere on the car. Significantly, however, this is the subject of DC's *trademark* claim, and not its *copyright* claim.[4] As such, the fact that both the 1966 Replica and *some* of the batmobiles in DC's comic books have "bat symbols" does not establish that Towle's replicas are substantially similar to DC's batmobiles.

Nor can DC establish that the replicas are substantially similar to the batmobiles in DC's comic books on the ground that they share purported character traits. Specifically, DC asserts that the Batmobile "has always been fast, reliable

_____

[4]DC has never alleged copyright infringement of the bat symbol.

11

and indestructible, remaining hidden in the Batcave until Batman needs it," and because "the visual and narrative depictions in the Comics have given the Batmobile depth and personality."  AB at 24.

Of course, even assuming that these characteristics were enough to make the batmobiles in the comic books a *character* that warrants copyright protection[5], the Replicas, which are functioning automobiles, rather than characters in a fictional work, do not portray <u>any</u> of the personality traits purportedly exhibited by the batmobiles in DC's comic books.  Among other things, the Replicas do not remain "hidden in the Batcave" until Batman needs it, and the Replicas, which are, after all, functional automobiles, are obviously not indestructible.[6]  Moreover, aside from the fact that characteristics such as "fast" and "reliable" might be attributable

---

[5]Again, DC's arguments are contradicted by the record:  As reflected in Detective Comics #156 the Batmobile is not indestructible.  It was destroyed, and had to be rebuilt by Batman.  ER 1496-1508.  Additionally, in Detective Comics #408, a child is able to steal the Batmobile's tires.  ER 1417-1421.

[6]DC also argues that, even if this Court does not find that the batmobile is protectable as a character, it is separately protectable as a "protectable literary element" because it is sufficiently delineated by its many consistent and well-depicted features.  AB at 28.  Although it is unclear exactly what DC is arguing here, in the cases upon which DC relies, both the infringing works and the infringed works were expressive literary works (films and books), and the courts found copyright infringement because the works were substantially similar under the extrinsic test.  <u>See</u> <u>Universal v. Harold Lloyd Corp.</u>, 162 F.2d 354 (9th Cir. 1947; <u>Cavalier v. Random House, Inc.</u> 297 F.3d 815 (9th Cir. 2002).

to almost any automobile, there is no evidence whatsoever in the record as to how "fast" or "reliable" Towle's replicas are.

## B.    DC HAS FAILED TO ESTABLISH THAT THE BATMOBILES THAT APPEAR IN THE COMIC BOOKS WARRANT COPYRIGHT PROTECTION AS A "CHARACTER."

DC maintains that the batmobiles that appears in its comic books have been "sufficiently delineated" in the comics over the last seventy years to warrant copyright protection as a character.  AB at 23.  Significantly, however, DC fails to address seriously the evidence that was submitted by Towle, which establishes that, since the Batmobile first appeared in 1941, it has undergone numerous significant transformations, including various automobile makes, models, colors, designs, and styles.

Indeed, as set forth in Towle's Opening Brief, the dozens of batmobiles that were portrayed in the comic books throughout the years are not even remotely similar to one another, let alone Towle's replicas.  See ER 752, 1415-1425, and 1460-1511.  By way of example, the Batmobile has appeared as a 1940's Packard-with a single fin, as a 1960's Corvette with two fins, as a muscle-type car that contained no fins, as a tractor, and as a tank.  See ER 1502, 1511, 1470.

13

Accordingly, the Batmobile, which has appeared in more than 100 variations in the Comic books, has not displayed the widely-consistent and recognizable traits that are required to establish copyright protection for a character. ER 752, 1552, 850. Indeed, the only common thread among these vehicles, and the only reason for which anyone would recognize almost any of the cars as "Batmobiles," is that the cars appear in a *Batman* comic book. See e.g. ER 752, 1415-1425, and 1460-1511.

Notwithstanding the foregoing irrefutable evidence, DC argues that certain "primary visual characteristics" have remained consistent in the Batmobile – namely: "the vehicle's dark color, the sleek profile, the bat-themed front end, the exaggerated fenders, the jet engine after burner, the batfin motif, curved windshield, and assortment of switches, lights and dials associated with its many gadgets." Significantly, however, even a cursory review of all of the Batmobiles that appear in DC's comic books reveals that this statement is not accurate:

- The Batmobile does not always have a "dark color." In fact, the first Batmobile was red. ER at 752.

- The Batmobile does not consistently contain a curved windshield. ER at 1417, 1470, 746, and 752.

- The Batmobile does not consistently have a sleek profile. ER at

14

1417, 1470, 746, and 752.

•     The Batmobile does not consistently have a jet engine after burner. ER at 1417, 1470, 746, and 752.

•     The Batmobile does not consistently have a bat-themed front end.  ER at 1417, 1470, 746, and 752.

Although this list is certainly not exhaustive, it plainly demonstrates that, contrary to DC's assertion, there are no "primary visual characteristics" that have remained on the Batmobile throughout the decades.

Recognizing as much, DC asserts that "the Batmobile is a cutting-edge stylish vehicle, many of its design elements and capabilities in the 1930's have been revised over the subsequent decades," as if this somehow strengthens its argument that the Batmobile is a character.  However, this argument directly contradicts the cases in which the courts have found copyright protection for characters only because they displayed **consistent, widely-identifiable traits** (as opposed to evolving, improving characteristics).  See Rice v. Fox Broad. Co., 330 F.3d 1170, 1175 (9th Cir. 2003); Toho Co., Ltd. v. William Morrow and Co., Inc., 33 F.Supp.2d 1206, 1215 (C.D. Cal. 1998).

Indeed, the only case upon which DC relies for its assertion that the "updates" to the car attest to "its strength as a character, not weakness in

15

protectability," is <u>Metro-Goldwyn Mayer v. American Honda Motor Co., Inc.</u>, 900 F. Supp. 1287 (C.D. Cal. 1995) (hereinafter "MGM").  However, the <u>MGM</u> case, a district court case, does not even remotely stand for the argument that DC is making in this case.

Rather, the <u>MGM</u> court found that the James Bond character is a copyrightable character under either "the story being told" test or the Second Circuit's "character delineation" test, because James Bond has certain consistent character traits[7] that have been developed over time through the sixteen MGM films in which he appeared.  The court further ruled that: "because many actors can play Bond is a testament to the fact that Bond is a unique character **whose specific qualities remain constant** despite the change in actors."  <u>Metro-Goldwyn Mayer</u>, 900 F. Supp. at 1296 (emphasis added).[8]

---

[7]The Bond character, which is human, has numerous, consistent, widely-identifiable traits that are common to all of the different "Bonds" (tuxedos/sharp clothing, some sort of Bond car, martinis "shaken, not stirred," quick-witted, lady's man).

[8]The <u>MGM</u> case might be very persuasive if the present case was about *Batman*, who does have common characteristics from actor to actor (cowl, tights, boots, belt with gadgets, some sort of batmobile, bat logo on chest, rich, eccentric alter ego), and not the *Batmobile*, which has no such common characteristics.

Finally, it must be reemphasized that the Batmobile is an inanimate object. DC relies upon another non-binding district court case[9] – New Line Cinema Corp. v. Russ Berrie & Co., 161 F. Supp. 2d 293 (S.D.N.Y. 2001) - in support of its assertion that inanimate objects may be afforded copyright protection as a character.

However, the reasons for which the inanimate object in Berrie (a razor glove) was considered a *character* was that the design of the glove never varied, and that it was considered a component part of a character (Freddy Krueger), which significantly aided in identifying the character.[10]  Significantly, the razor glove was the primary means by which Freddy killed his victims.

In addition, DC's assertion that the issue in the present case was already decided by this Court in Halicki Films, LLC v. Sanderson Sales & Marketing, 547 F.3d 1213 (9th Cir. 2008) is false.  Far from holding that the car "Eleanor" was protected as a copyrightable character, this Court, noting that the Eleanor car

---

[9]In addition to the fact that Berrie is non-binding, the decision is also erroneous.  The court relied on the holding in Dallas Cowboys, etc. v. Pussycat Cinema, Ltd., 604 F.2d 200, 204 (2d Cir.1979), which was a *trademark* case, to reach its own holding.

[10]Batman certainly does not need a batmobile to aid in identifying his character.  Nobody, seeing a man in grey tights, with pointed ears, a cowl, boots, a cape, a utility belt, and a huge yellow oval with a black bat on his chest is likely to say: "that cannot be Batman; there is no Batmobile."

17

"display[s] consistent, widely identifiable traits" (Id. at 1226), remanded this "fact-intensive" issue to the district court in order to determine whether the car's physical, conceptual, and unique elements of expression qualified the car as a character that warranted copyright protection.  Id. at 1225.

In the present case, despite the numerous, inconsistent incarnations of the Batmobile from book to book and movie to movie, the District Court held that the Batmobile was a *character* without allowing this "fact-intensive issue" to go to a jury.

### C.    THE REPLICAS ARE NOT UNAUTHORIZED DERIVATIVE WORKS.

#### 1.    The Replicas Are Not Derivative Of The Batmobiles In DC's Comic Books.

According to DC, under the extrinsic test, the replicas are substantially similar to the batmobiles in the comics because both are "black, aerodynamic, have scalloped batfins, a bat-themed front bumper,  exaggerated front fenders, a jet engine after burner, significantly curved windshields, bat symbols throughout, numerous fantastical bat-themed gadgets, including the bat phone."  AB 29-30. However, as discussed above, these similarities either do not exist, or they relate to

unprotected functional elements that must be filtered out prior to comparing the works.

Although DC argues that the similarities are substantial because of "Towle's repeated promises to prospective buyers that ordinary members of the public will associate the Replicas with Batman," and "Towle's high fees also indicate that the consumers and public will recognize the Replicas as based on Batman." this argument misses the point entirely.  Indeed, such evidence is entirely *irrelevant* to the inquiry as to whether two works are substantially similar under the extrinsic test, under which the court objectively compares the two works at issue to determine whether there are substantial similarities in protectable expression.  See e.g., Rice v. Fox Broadcasting Co., 330 F.3d at 1176.

DC next asserts that courts have held that unauthorized remakes – even those that differ significantly from the original – infringe the underlying work.  AB at 30.  This assertion does not save DC's otherwise erroneous argument and, in fact, is misleading.

Towle is not asserting that there is no infringement because there are many *differences* between DC's Batmobiles and Towle's replicas[11].  Rather, Towle

_____

[11]Significantly, however, the differences in two works cannot be ignored.  See Olson v. National Broadcasting Co., 855 F.2d 1446, 1450 (9th Cir. 1988) (disregarding testimony that improperly "de-emphasized dissimilarities").

asserts that there is no infringement because DC's Batmobiles and Towle's Replicas do not share <u>any</u> similarities of protectable expression.  Indeed, as DC itself acknowledges, the dissimilarities in the two works are only irrelevant ***if in other respects similarity as to a substantial element of plaintiff's work can be shown***.  AB at 31 (citing 3 *Nimmer* §13.03[B]).

In fact, one of the precise reasons for which the court in <u>Salinger v. Colting</u>, 607 F.3d  68 (2d Cir. 2009), one of the cases upon which DC relies, found that the book "60 Years Gone" infringed Salinger's copyright in "Catcher in the Rye" because the main character in "60 Years Gone," Mr. C, was substantially similar to the main character in "Catcher In The Rye."  Specifically, Mr. C narrated like Holden Caulfield, he shared may of Holden's notable eccentricities, and his adventures paralleled those of Holden.  Accordingly, it was these *similarities* that led the court to conclude that there was "substantial similarity between Catcher In The Rye and 60 Years later, as well as between the character Mr. C and Holden Caufield, such that it was unauthorized infringement of Plaintiff's copyright." <u>Salinger v. Colting</u>, 607 F.3d at 73.

## 2. The Designs Of The 1966 (Barris) Batmobile And 1989 (Furst) Batmobile Are Not Derived From The Batmobile(s) In DC's Comic Books.

DC argues that "as established by the agreements, the 1966 [Barris] and 1989 [Furst] Batmobiles are derivative works of the [comic book] Batmobile," because "[e]ach is an updated Batmobile commissioned by DC's licensees for use in the Series or Film."  AB at 34.  Additionally, DC argues that "[l]ike the Replicas, the 1966 and 1989 Batmobiles are substantially similar to the Batmobile because they share a host of similar expressive visual elements."   AB at 34.

As an initial matter, there is no evidence that either the 1966 Batmobile or the 1989 Batmobile is an "updated Batmobile."[12]

Morever, that the 1966 and 1989 Batmobiles were allegedly "commissioned" by DC's licensees for use in the Series or Film hardly demonstrates that the 1966 and 1989 Batmobiles are *derivative* of the batmobiles in DC's comic books.  As DC acknowledges, a derivative work is "any work based in whole, or in substantial part, upon a pre-existing work, if it satisfies the requirements of originality."  AB at 20.  Thus, the fact that the 1966 and 1989

---

[12]It is difficult to imagine what an "updated Batmobile" would be, given that there are over 100 versions of the comic book Batmobile, with a myriad of different makes, models, colors, and accessories.

21

batmobiles were purportedly commissioned by DC's licensees is irrelevant to whether or not the 1989 and 1966 batmobiles are derivative of DC's batmobiles.

Nor do the 1966 and 1989 Batmobiles share "a host of similar expressive visual elements."  See AB at 34.  As discussed fully in Towle's Opening Brief, even a cursory comparison of the 1989 Batmobile and the batmobiles that appear in DC's comic books reveals that the *only* characteristic that the 1989 Batmobile shares with any of DC's Batmobiles (other than the name), is that they are both automobiles.  See ER 1415-1425 and 1460-1511.

Similarly, a comparison of the Barris Batmobile with the batmobiles in DC's comic books reveals that they share no similarities of protectable expression. First, as demonstrated by the record, Barris's 1966 Batmobile used a one of a kind 1955 Lincoln Futura as the base, and Barris independently created all of the elements that he added to the Futura.  See ER 1770, 1786-1787.

Moreover, the only (unprotectable) similarities that the 1966 Batmobile share with any of the Batmobiles in DC's comics is that the 1966 Batmobile and *some* of the comic book Batmobiles have fins and curved windshields.  However, these elements are not protected by copyright because: (1) many cars have fins and curved windshields; and (2) those characteristics are functional elements and, on their own, cannot support a finding of substantial similarity.  See e.g.,  Norris

Industries, Inc., 696 F.2d at 923-925; Inhale, Inc., 739 F.3d at 449.

Simply put, DC completely fails to identify *any* substantial similarities that exist between the 1966 and 1989 Batmobiles with the Batmobiles that appear in it comic books. Instead, DC simply states, *without citing to any evidence* that:

> Like the Replicas, the 1966 and 1989 Batmobile are substantially similar to the Batmobile because they share a host of similar expressive visual. Furthermore, the 1966 and 1989 Batmobiles are portrayed (throughout the Series and Film) with the Batmobile's non-visual characteristics.

AB at 34. DC's failure even to identify the purported similarities between the 1989 and 1966 Batmobiles and the batmobiles in its comic books is fatal to its copyright infringement claim.[13]

---

[13]Although DC identifies three elements – decorative bat emblems, scalloped batfins, and swollen fenders (see AB at 40-41) – that it claims appear in the 1966 (Barris) and 1989 (Furst) Batmobiles as "numerous protectable, non-functioning - fictionally or otherwise - separable features," DC does not appear to argue that these features are derived from the Batmobiles in its comic books. See AB at 40-41. To the extent that DC claims that these three features derive from the batmobiles, as set forth above, they cannot support a finding of substantial similarity because, notwithstanding DC's unsupported assertion to the contrary, fins and fenders are functional, and, DC cannot claim copyright infringement of the bat symbol.

**D.    DC HAS FAILED TO DEMONSTRATE THAT IT OWNS THE COPYRIGHTS IN THE 1966 AND 1989 BATMOBILES.**

As the District Court properly recognized, DC "resorted to conclusory assertions that it owns rights to the 1966 and 1988 [sic] Batmobiles." ER 37. Indeed, as demonstrated below, DC's claimed ownership of the copyrights in the 1966 and 1989 Batmobiles rests entirely on its overbroad and inaccurate interpretations of various agreements, blatant hearsay, and speculation.

**1.    Towle Did Not Infringe DC's Merchandising Rights Or Copyright In The 1966 Batmobile.**

DC's assertion that it owns the copyright to the 1966 Batmobile and associated merchandising rights is completely unsupported by the record. First, with respect to DC's purported merchandising rights to the 1966 Batmobile, DC fails to address the fact that the primary piece of evidence in support of this assertion – the testimony of Jay Kogan (who stated on *information and belief*, that DC retained all right, title, and interest in *certain specifications* that were given to Barris when he constructed the Batmobile) – was deemed to constitute inadmissible hearsay by the District Court.   ER 75.

24

Next, DC argues that, pursuant to the agreement, Barris, Fox, or Greenway did not own any rights in the Batmobile or DC's trademarks (which, of course, is irrelevant to their copyright ownership), and could only own rights in the 1966 Batmobile's new design elements that did not pertain to "the 21 listed features[14], were not contained in the attached drawings to the 1965 agreement, and were not features of the underlying automobile upon which the 1966 Batmobile was built." ER 1294-95. Thus, DC argues that, because it did not transfer its preexisting copyrights in the Batmobile, as it was featured in the comics, any design elements of the Batmobile that appeared in the comics remained the property of DC.

Significantly, however, DC's designated "person most knowledgeable," Jay Kogan, admitted that 12 of the 15 features identified in the agreement did not appear in *any* of the comic books, and two of the remaining three features are not present on Towle's replica. ER 322-325. Accordingly, DC's assertion that the 1966 Batmobile is derivative of preexisting design elements that appeared in the comic books, is simply inaccurate.[15]

---

[14]There are actually 15 listed features (ER 1302-03).

[15]DC also admits that "Barris, Fox and Greenway may have modest rights in certain newly added design elements of the 1966 Batmobile," but "such rights are at best extremely limited and difficult to identify; Towle has identified none."

DC also claims that George Barris's testimony that he independently created the 1966 Batmobile does not support Towle's argument that the 1966 Batmobile is not a derivative work because, according to DC, Barris only testified that he was not given drawings *at that time*.  However, this characterization of Barris's testimony by DC is inaccurate.  Barris testified that he designed and built the 1966 Batmobile based completely on his own design, which was not based on any of DC's comic books, or on anyone else's drawings.  ER 1771.  Barris (or his staff) designed each of the parts on the 1966 Batmobile.  ER 1774-1780.

In short, the record is devoid of any evidence showing that DC retained (or obtained) merchandising rights to the 1966 Batmobile, but is replete with evidence demonstrating that Barris independently created the 1966 Batmobile.  DC has failed to establish that it has standing to pursue its copyright claim based on the 1966 Batmobile.

### 2.    DC Has Failed To Demonstrate Ownership Of The 1989 Batmobile.

Similarly, DC lacks standing to pursue a copyright infringement claim with respect to the 1989 Batmobile.  Although it is undisputed that the 1989 Batmobile was created by Anton Furst pursuant to a contract with Warner Bros. Productions,

Ltd., as a work for hire, the record is devoid of admissible evidence showing that

Warner Bros. Productions, Ltd. transferred its rights to the Batmobile to DC.

Significantly, DC admits that "transfers of exclusive rights . . . must be in

writing."  AB 42-43.  Nevertheless, it argues, by relying on inapposite law[16] that,

"as a defendant in an infringement case who has introduced no evidence of a

copyright  ownership dispute between DC and its licensees or predecessors in

interest, Towle lacks standing."  AB at 43.

Of course, DC's argument here is both misleading and misses the point:  As

a plaintiff in a copyright infringement action, DC (and not Towle) has the burden

of demonstrating that it owns the copyrights that are at issue.  See Feist

Publications, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991).

---

[16]Specifically, DC cites Maguson v. Video Yesteryear, 85 F.3d at 1428 (9th Cir. 1996) and Zenix Indus. v. King Hwa, 920 F.2d 937 (9th Cir. 1990), stating that "[w]here the copyright holder appears to have little dispute with its licensee on this matter it would be anomalous to permit a third party infringer to invoke this provision against the licensee."  AB at 43. However, these cases only hold that "a prior oral grant that is confirmed by a later writing becomes valid as of the time of the oral grant, even if the writing is subsequent to the initiation of litigation on the copyright infringement." Maguson at 1428. They do not hold that the Plaintiff does not have to still provide a chain of title. In this case, there is no evidence of an assignment or license from WBPL to WPE.  Additionally, even if the case were relevant, Zenix Indus. v. King Hwa is an unpublished opinion, which may not be cited or relied upon.

Additionally, because DC did not create the 1989 Batmobile that appears in the motion picture, it must establish, through chain of title documents, that it owns the copyright to the work.  See Religious Tech. Ctr. v. Netcom On-Line Comm. Services, Inc., 923 F. Supp. 1231, 1241 (N.D. Cal. 1995); Motta v. Samuel Weiser, Inc., 768 F.2d 481, 484 (1st Cir. 1985).

DC then backtracks from its "transfer . . . must be in writing" admission, by arguing that the oral testimony of Jay Kogan and Wayne Smith is sufficient to fill the gap in the chain of title.  Significantly, however, because the testimony of Smith and Kogan is inadmissible hearsay (and because their oral testimony does not constitute a "writing"), the statements do not establish that DC has any rights to the 1989 Batmobile.

As set forth in Towle's Opening Brief, the *only* evidence offered by DC in support of their assertion that Warner Bros. Production, Ltd. transferred its ownership rights to the 1989 Batmobile to Warner Bros. Inc. is: (1) testimony from Smith, which was based on his review of entirely irrelevant documents in WBEI's  eDocs database; and (2) statements from Jay Kogan that were all made on "information and belief."  See ER 1557-1558.  The statements of Smith and Kogan, which are clearly offered for the truth of the matter, are nothing but

inadmissible hearsay.  Nothing in DC's Answering Brief establishes otherwise.[17]

Specifically, DC asserts that the statements from Smith and Kogan are not hearsay because "they were offered against an opposing party by a person whom *the proponent party* authorized to make a statement on the subject . . . .," and because "statements regarding 'chain of title,' . . . relate to the testifying entities' records and corporate structure and are excluded from hearsay under Federal Rule of Evidence 801(d)(2) and (D).  AB at  (emphasis added).  Significantly, however, Federal Rule of Evidence 801(d)(2) and (D) pertain to statements made *by an opposing party* - not by the proponent party (see Fed. R. Evid. 801(d)(2) and (D)), and therefore, it is no surprise that the cases upon which DC relies do not support DC's argument.[18]

---

[17]It should be pointed out, before any erroneous assumptions are made, that, aside from the hearsay nature of these statements, merely because a party purports to "retain" certain rights in an agreement does not mean that that party owned those rights in the first place.

[18]DC cites HTI Holdings, Inc. v. Hartford Cas. Ins. Co., 2011 WL 4595799 (D. Or. 2011).  However, in HTI, the declarant, unlike Smith or Kogan, was an *expert witness*.  Accordingly, the court held that his testimony consisting of an opinion that he formed from reviewing a letter was admissible.  HTI Holdings, Inc., at *4.  Although DC also cites to Williamson v. Life Ins. Co. of N. Am., 2012 WL.3262857 (D. Nev. 2012), in Williamson, the court simply stated in a footnote, without providing any analysis or citing to any supporting authority, that, because the declarant was a corporate representative and was noticed for deposition pursuant to Fed. R. Civ. P. 30(b)(6), his sworn affidavit was admissible.  Even assuming Williamson had any import, which it does not, Smith was not noticed for

Finally, DC's remaining argument simply *emphasizes* the lack of evidence that DC has concerning its ownership of the 1989 Batmobile.  According to DC: (1) DC licensed WBI to make the Film; (2) WBPL hired Furst to work as a production designer on the Film; and (3) Furst designed the 1989 Batmobile shown in the Film.  DC then asserts that these purported facts somehow constitute evidence that WBI and WBPL are "related entities that worked as one to produce the Film," and that the "Film obviously could not have been made without the authorization of all those who worked together on the project, including DC."  See AB at 43-44.

Of course, DC's *assertion* that Warner Bros, Inc. and Warner Bros. Productions, Ltd. are "related entities" that worked together on the Film, without providing any *evidence* that Warner Bros. Productions, Ltd. transferred rights to the 1989 Batmobile to DC, does not establish that DC owns rights to the 1989 Batmobile (or anything else).

Accordingly, as demonstrated above, DC has failed to produce sufficient chain of title evidence that demonstrates that Warner Bros. Productions, Ltd. transferred ownership of the 1989 Batmobile to Warner Bros. Inc.  There is a very obvious gap in the chain of title, which precludes DC from establishing that it

---

deposition pursuant to Fed. R. Civ. P. 30(b)(6).

owns the copyright to the 1989 Batmobile.

### E.    DC'S FAILURE TO PROVIDE TOWLE NOTICE OF THE REGISTRATIONS IS FATAL TO ITS COPYRIGHT CLAIM.

DC's assertion that Towle had sufficient notice of the registrations because "Towle asked the court to take judicial notice of the very registrations early in the case," is absurd.  The precise reason for which Towle was requesting judicial notice of the registrations in his Motion to Dismiss was to show the court that DC was not the registered owner of the copyrights to the TV series or 1989 motion picture, and that the First Amended Complaint did not allege that DC was suing on those copyrights, nor did it claim that it held any exclusive rights to those copyrights.  ER 1879-1924.

Towle previously has cited cases that state that a plaintiff must identify the copyrights and the copyright registrations upon which the lawsuit is based.  DC has attempted to distinguish those cases by arguing that, in those cases: "the complaints did not adequately describe the work infringed."  Ironically, that is precisely what occurred here: DC is pursuing copyright claims on properties that were not identified anywhere in the First Amended Complaint.

Therefore, the District Court's order granting summary judgment should be reversed.  Additionally, because Towle has conclusively established that he did not infringe any of the 35 copyrights that were identified in DC's Complaint, the District Court's order denying Towle's motion for partial summary judgment should be reversed.[19]

**F.      TOWLE SHOULD HAVE BEEN PERMITTED TO ASSERT A LACHES DEFENSE TO DC'S TRADEMARK INFRINGEMENT CLAIM.**

DC argues that: "because Towle admitted that he knew of the property and bat designs, intentionally copied the 1966 and 1989 Batmobiles and the trademarks they contained and used the Batmobile name," this is sufficient to prove knowing and wilful infringement.  Significantly, however, DC fails to address the authorities that discuss what constitutes "knowing and wilful" infringement.

---

[19]DC's failure to identify the specific copyrights or batmobile at issue – other than to say "all of them" – is significant. DC, which owns tens of thousands of copyrights, should not be allowed to file a complaint that does not specify the precise copyrights at issue, particularly when it apparently is no longer alleging that any of the 35 copyrights identified in the Complaint have been infringed.

As set forth in <u>Conan Properties, Inc. v. Conan Pizza, Inc.</u>, 752 F.2d 145 (5th Cir. 1985), in order to foreclose Towle's laches defense, DC must show that there was more than mere objective evidence that Towle employed the allegedly-infringing marks with the wrongful intent of capitalizing on DC's goodwill; in fact, DC must show fraudulent intent.  <u>Id.</u> at 150; <u>see</u> <u>also</u>, <u>Jarrow Formulas, Inc. v. Nutrition Now, Inc.</u>, 304 F. 3d (9th Cir. 2002).

In the present case, far from knowingly or subjectively (or even objectively) intending to confuse his buyers, Towle expressly advised potential purchasers that he was not associated with DC, and that his cars were replicas.  ER 1791. Moreover, <u>all</u> of his buyers knew that he did not have a license from – nor was he associated with – DC.  ER 1797-1807.

Although DC argues that Towle sometimes advertised the replicas as a "Gotham Prowler," speculating that this was "out of an abundance of caution and to avoid needless entanglements with DC" (AB at 59), this evidence actually supports Towle's contention that he did not subjectively intend – nor did he desire – to infringe any of DC's trademarks.

33

As such, because there is no evidence that Towle knowingly and subjectively intended to confuse his buyers, the District Court's order precluding the defense of laches should be reversed.


Dated: February 21, 2014         Edwin F. McPherson
                                   Tracy B. Rane
                                   **MCPHERSON RANE LLP**

                                   Larry Zerner
                                   **LAW OFFICES OF**
                                    **LARRY ZERNER**

                                   By:  /s/ Edwin F. McPherson
                                         EDWIN F. McPHERSON
                                         Attorneys for Defendant and
                                         Appellant MARK TOWLE

## III.  CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation set forth in Fed. R. App. P. 32(a)(7)(B)(ii) of the Federal Rules of Appellate Procedure because it contains 6,999 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of  Fed. R. App. P. 32(a)(5)(B) and the type style requirements of Fed. R. App. P. 32(a)(6) because the brief has been prepared in a proportionally spaced typeface using Word Perfect 14-point Times New Roman font.


Dated: February 21, 2014                    Edwin F. McPherson
                                            Tracy B. Rane
                                            **MCPHERSON RANE LLP**

                                            Larry Zerner
                                            **LAW OFFICES OF**
                                            **  LARRY ZERNER**


                                            By:  /s/ Edwin F. McPherson
                                                 EDWIN F. McPHERSON
                                                 Attorneys for Defendant and
                                                 Appellant MARK TOWLE